UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLAST OFF MEDIA INC.,

          Plaintiff,

    -against-

DOWNTOWN MUSIC CAPITAL, LLC,
DOWNTOWN MUSIC LLC, and
DOWNTOWN MUSIC HOLDINGS LLC,

          Defendants.

Civil Action No.: 1:25-cv-09363-PAE

ECF CASE

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY  10036
(212) 790-4500

*Attorneys for Defendants Downtown Music Capital, LLC,*
*Downtown Music LLC, and Downtown Music Holdings LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................................... 1

ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ...................................... 4

    A.   YouTube's Advertisement Revenue Generation and Strict Monetization Policies......... 4

    B.   Blast Off's Business Model and Widespread Violations of YouTube's Policies. ........... 5

    C.   Blast Off's YouTube Distribution Agreement with Downtown..................................... 5

    D.   YouTube Sends Downtown an Official Warning About Blast Off's Content................. 7

LEGAL STANDARD .................................................................................................... 8

ARGUMENT ................................................................................................................. 8

I.    BLAST OFF FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT ........... 8

    A.   Blast Off Fails to Satisfy Rule 9(b)'s Pleading Standard................................................ 9

    B.   Blast Off Fails to Plead Contemporaneous Fraudulent Intent. .....................................11

    C.   Blast Off Fails to Plead Reliance. ................................................................................ 12

    D.   Blast Off's Fraud Claim is Duplicative of Its Breach of Contract Claim. .................... 13

II.   BLAST OFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................... 14

III.  BLAST OFF FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED
     COVENANT ................................................................................................................ 18

IV.  BLAST OFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ..................... 20

V.   BLAST OFF FAILS TO STATE A CLAIM FOR CONVERSION..................................... 21

VI.  BLAST OFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH
     BUSINESS RELATIONS ............................................................................................ 22

VII. BLAST OFF'S SEVENTH AND EIGHTH CLAIMS ARE SOLELY REMEDIES AND
     DUPLICATIVE OF THEIR OTHER CLAIMS, AND MUST BE DISMISSED ................. 24

VIII. BLAST OFF'S REQUEST FOR CONSEQUENTIAL AND PUNITIVE DAMAGES
     SHOULD BE STRICKEN ........................................................................................... 25

CONCLUSION............................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*,
    220 A.D.3d 435 (N.Y. App. Div. 1st Dep't 2023) ................................................. 18

*Andrews v. Cerberus Partners*,
    271 A.D.2d 348 (N.Y. App. Div. 1st Dep't 2000) ................................................. 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 8

*Austin v. Town of Farmington*,
    826 F.3d 622 (2d Cir. 2016) ..................................................................................... 8

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010) ................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 8

*Belsito Commc'ns, Inc. v. Dell, Inc.*,
    2013 WL 4860585 (S.D.N.Y. Sept. 12, 2013) ...................................................... 14

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*,
    259 F. Supp. 3d 16 (S.D.N.Y. 2017) ..................................................................... 19

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (N.Y. 2004) ....................................................................... 22, 23, 24

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................................... 24

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000) ................................................................... 21

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    70 N.Y.2d 382 (N.Y. 1987) ................................................................................... 20

*Comfort Inn Oceanside v. Hertz Corp.*,
    2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) ........................................................ 14

*Coppelson v. Serhant*,
    2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ............................................... 10, 11, 12

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021) ..................................................................... 4

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (N.Y. 1995) ................................................................................... 18

*Darabont v. AMC Network Ent., LLC*,
    193 A.D.3d 500 (N.Y. App. Div. 1st Dep't 2021) ........................................... 18, 19

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011) ............................................................................... 14, 20

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007) ................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

*Duran v. Henkel of Am.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020)...................................................................11

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011)............................................................10, 11

*Edart Leasing Co., LLC v. Ryder Truck Rental, Inc.*,
2015 WL 4524313 (S.D.N.Y. July 6, 2015)..........................................................16

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
343 F.3d 189 (2d Cir. 2003)..................................................................................13

*EXRP 14 Holdings LLC v. LS–14 Ave LLC*,
228 A.D.3d 498 (N.Y. App. Div. 1st Dep't 2024)................................................17

*Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*
2012 WL 4119561 (S.D.N.Y. Sept. 18, 2012).......................................................25

*Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*,
698 F. Supp. 3d 663 (S.D.N.Y. 2023)...................................................................21

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*,
756 F.3d 204 (2d Cir. 2014)..................................................................................16

*Glob. Intellicom, Inc. v. Thomson Kernaghan & Co.*,
1999 WL 544708 (S.D.N.Y. July 27, 1999) ....................................................15, 18

*Goldstein v. CIBC World Mkts. Corp.*,
776 N.Y.S.2d 12 (N.Y. App. Div. 1st Dep't 2004) ..............................................20

*Gottwald v. Sebert*,
148 N.Y.S.3d 37 (N.Y. App. Div. 1st Dep't 2021) ..............................................19

*Hauptman v. Interactive Brokers, LLC*,
2018 WL 4278345 (S.D.N.Y. June 12, 2018) .......................................................24

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) .......................................................9, 10

*Hutton v. Priddy's Auction Galleries, Inc.*,
275 F. Supp. 2d 428 (S.D.N.Y. 2003)...................................................................24

*IDT Corp. v. Tyco Grp., S.A.R.L.*,
23 N.Y.3d 497 (N.Y. 2014) ..................................................................................16

*In re Welspun Litig.*,
2019 WL 2174089 (S.D.N.Y. May 20, 2019) .......................................................11

*JBCHoldings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013).............................................................22, 23

*Jiajia Luo v. Sogou, Inc.*,
465 F. Supp. 3d 393 (S.D.N.Y. 2020)......................................................................8

*Johnson v. Cestone*,
162 A.D.3d 526 (N.Y. App. Div. 1st Dep't 2018)................................................22

*Junk v. Aon Corp.*,
2007 WL 4292034 (S.D.N.Y. Dec. 3, 2007) ........................................................13

## TABLE OF AUTHORITIES

**Page(s)**

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000)..................................................................................20

*Kirschner v. Bennett*,
648 F. Supp. 2d 525 (S.D.N.Y. 2009)....................................................................21

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
668 F. Supp. 3d 263 (S.D.N.Y. 2023)............................................................. passim

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..................................................................................11

*Logan Advisors, LLC v. Patriarch Partners, LLC*,
63 A.D.3d 440 (N.Y. App. Div. 1st Dep't 2009)...................................................19

*Lussoro v. Ocean Fin. Fed. Credit Union*,
456 F. Supp. 3d 474 (E.D.N.Y. 2020) ..............................................................16, 17

*Mañas v. VMS Assocs., LLC*,
53 A.D.3d 451 (N.Y. App. Div. 1st Dep't 2008)...................................................13

*Miller v. Holtzbrinck Publishers, LLC*,
2009 WL 528620 (S.D.N.Y. Mar. 3, 2009) ..........................................................11

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
737 F. Supp. 2d 137 (S.D.N.Y. 2010).....................................................................12

*MMCT, LLC v. JTR College Point, LLC*,
122 A.D.3d 497 (N.Y. App. Div. 1st Dep't 2014).............................................11, 13

*Pacnet Network Ltd. v. KDDI Corp.*,
912 N.Y.S.2d 178 (N.Y. App. Div. 1st Dep't 2010) .............................................25

*Pasternack v. Lab. Corp. of Am. Holdings*,
27 N.Y.3d 817 (N.Y. 2016) ...................................................................................12

*PetEdge v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017).....................................................................9

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009)...............................................................................9, 12

*Primedia Enthusiast Pub. Inc. v. Ashton Int'l Media, Inc.*,
2003 WL 22220375 (S.D.N.Y. Sept. 25, 2003).....................................................13

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996)......................................................................................4

*Simon v. Castello*,
172 F.R.D. 103 (S.D.N.Y. 1997) ...........................................................................10

*Soper v. Simmons Intern., Ltd.*,
632 F. Supp. 244 (S.D.N.Y. 1986) .........................................................................12

*StarVest Partners II, L.P. v. Emportal, Inc.*,
101 A.D.3d 610 (N.Y. App. Div. 1st Dep't 2012).................................................18

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*,
186 F. Supp. 3d 257 (E.D.N.Y. 2016) ....................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

*Trodale Holdings LLC v. Bristol Healthcare Invs. L.P.*,
  2018 WL 2980325 (S.D.N.Y. June 14, 2018) ............................................................9, 11, 12

*TufAmerica, Inc. v. Universal Music Pub., Inc.*,
  2025 WL 2700249 (S.D.N.Y. Sept. 23, 2025)........................................................................24

*Twitchell v. Town of Pittsford*,
  106 A.D.2d 903 (N.Y. App. Div. 4th Dep't 1984) ................................................................18

*Udell v. Berkshire Life Ins. Co. of Am.*,
  2005 WL 1243497 (E.D.N.Y. May 25, 2005) .......................................................................14

*Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*,
  87 N.Y.2d 36 (N.Y. 1995) ....................................................................................................21

*Wade Park Land Holdings, LLC v. Kalikow*,
  589 F. Supp. 3d 335 (S.D.N.Y. 2022).................................................................................23

## RULES

Fed. R. Civ. P. 9(b) ..............................................................................................2, 8, 9, 10

Fed. R. Civ. P. 12(b)(6)...........................................................................................8, 25

Fed. R. Civ. P. 12(f)..............................................................................................25

Defendants Downtown Music Capital, LLC, Downtown Music LLC, and Downtown Music Holdings LLC (collectively, "Downtown") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint ("FAC") with prejudice.

## PRELIMINARY STATEMENT

Streaming fraud is one of the music industry's greatest current problems. It exists in many and evolving forms—including the parasitic content associated with Plaintiff Blast Off Media, Inc.'s ("Blast Off") music—but comes down to bad actors seeking to exploit the music streaming industry to siphon off legitimately earned royalties from the true rightsholders. Downtown is at the vanguard of helping to safeguard the music industry against streaming fraud across platforms— including Spotify, Amazon, Apple Music, and YouTube—and is one of the founding members of the Music Fights Fraud Alliance, created in 2023 to ensure fairness for musicians and rightsholders.

Because Downtown prides itself on distributing music so that musicians, songwriters, and rightsholders receive legitimately earned royalties, Downtown requires that its partners and clients abide by the terms of service of the platforms (like YouTube) on which their music is featured. Therefore, in the YouTube Monetization Agreement (the "Agreement") between Downtown and Blast Off, Blast Off represented and warranted that its content ████████████████████ ███████████████████████████████████ However, as Blast Off concedes throughout the FAC, its music was widely used in violation of YouTube's terms, which represented an ongoing problem for which Blast Off had no permanent fix. Once YouTube warned Downtown that Blast Off's catalog violated its terms of service—for "circumvent[ing]" YouTube's monetization policies—Blast Off was unquestionably in material breach and Downtown was entirely within its rights to terminate the Agreement according to its express terms.

Indeed, as a result of YouTube flagging Blast Off's content, Downtown investigated and

found that (i) a staggering ███ of Blast Off's top assets were circumventing (or attempting to circumvent) YouTube's monetization policies; (ii) an estimated ███ of Blast Off's total revenue derived from activities violating YouTube's policies; and (iii) for September 2025, assets that accounted for at least ███ of Blast Off's reported revenue derived a portion of that revenue from channels containing reused (typically copyright-infringing) content, in violation of YouTube's policies. After YouTube informed Downtown of such problematic uses—including the widespread use of Blast Off's catalog on reused, unlicensed videos—Downtown could not allow such conduct to continue on its watch lest it risk secondary liability for facilitating copyright infringement.

Now, faced with Downtown's appropriate termination of the Agreement and a broken business model that Blast Off either cannot or is unwilling to fix, Blast Off has filed this farcical and far-fetched lawsuit. But the blame for Blast Off's woes rests solely with itself, and it cannot use the cratering of its tenuous business model to seek an extraordinary windfall from Downtown. Blast Off's lawsuit shoots for the moon but utterly fails to launch.

*First*, Blast Off's fraudulent inducement claim (Count I) falls far short of Rule 9(b)'s heightened pleading standard because it fails to identify the who, what, where, and when of the purported fraud. This claim is separately doomed because, as a matter of law, Blast Off cannot plead reliance. The Agreement contains a ████████████ in which Blast Off (a sophisticated party represented by counsel) ██████████████████████████████████████, and Blast Off alleges the fraudulent statements are outside the Agreement. At bottom, Blast Off's claim rests on a theory of buyer's remorse and actions taken in hindsight, which is not the stuff of fraud.

*Second*, Blast Off's contract claim (Count II) rests on a tortured, implausible reading of the Agreement, including objecting to Downtown doing precisely what the contract permits (and requires), such as ███████████████████████████████ (e.g., from YouTube).

Blast Off also complains that Downtown did not offer an opportunity to cure, but its ministerial grievance is futile because Blast Off concededly could not cure a breach based on actions deeply ingrained in its business model and nowhere alleges how it could have done so.

*Third*, the implied covenant and unjust enrichment claims (Counts III and IV) both attempt to replead Blast Off's faulty fraud and contract claims. Blast Off also improperly attempts to use its implied covenant claim to rewrite the Agreement to excuse its material breach—a tactic long condemned by New York courts and foreclosed here. And its unjust enrichment claim fails to identify any "enrichment" to Downtown; on the contrary, Blast Off still wrongfully possesses and has not returned the unrecouped (i.e., unearned) █████████████.

*Fourth*, neither tort-based claim—for conversion (Count V) or tortious interference with business relations (Count VI)—comes close to pleading the required elements. The former rests on the flawed theory that Downtown has somehow "converted" Blast Off's property because Downtown withheld revenue; however, because the Agreement expressly permits ████████████ ██████████████████████████████████████, this claim fails as a matter of law. The tortious interference theory fares no better; among other things, Blast Off does not identify any specific relationships with which Downtown *intentionally* interfered, nor does Blast Off satisfy the "high bar" of demonstrating that Downtown acted with malice as opposed to its business interests.

*Finally*, Blast Off brings claims for injunctive relief (Count VII) and declaratory relief (Count VIII), but neither is a recognized cause of action sufficient to establish liability and each is duplicative of Blast Off's other failed claims.

Because each of Blast Off's claims is legally deficient and incurable by amendment, the Court should dismiss the FAC in its entirety with prejudice. In the event any contract claim were to survive, the Court should strike Blast Off's requested relief that is barred by the Agreement's ████████████████████████, including as to ██████████████████ and ██████████████████████.

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

### A.    <u>YouTube's Advertisement Revenue Generation and Strict Monetization Policies.</u>

The parties' Agreement governs Downtown's distribution of Blast Off's content to YouTube and resulting royalty payments. (FAC ¶¶ 35, 37-43.) YouTube videos generate advertising royalties payable to the video's rightsholders, including in library music that can be attached to YouTube Shorts (i.e., short-form videos). (*Id.* ¶¶ 23-25.) YouTube's "sophisticated Content Management System (CMS) [] allows copyright holders to control how their music is used on the platform," specifically to (i) monetize (i.e., place advertisements on the video); (ii) track (i.e., monitor viewership data); or (iii) block. (*Id.* ¶¶ 23, 24.)

To clamp down on bad actors attempting to wrongfully capture a share of revenue generated on YouTube (e.g., via streaming fraud in its various iterations, including the type of parasitic content at issue here) YouTube's policies address how channels can be monetized. (*See* Declaration of Matthew F. Bruno, dated Jan. 16, 2026 ("Bruno Decl."), Ex. A ("YouTube Channel Monetization Policies") (updating monetization policy "to better clarify this includes content that is repetitive or mass-produced," which "has always been ineligible for monetization under [YouTube's] existing policies")).[1] Among other things, YouTube prohibits monetizing "inauthentic content," including content that is repetitive and mass-produced. (*Id.*) Examples of "inauthentic content" include AI-produced content, stock content, or re-used content (i.e., content already on YouTube or another online platform and for which the user does not own the copyright). (*Id.*) YouTube issues official warnings for circumvention of its policies, such as "[u]sing CMS to

---

[1] Because the FAC includes numerous references to YouTube's policies and the parties' correspondences relating to the same, (*see e.g.*, FAC ¶¶ 29, 48, 51, 54, 68, 86-87; *see also* FAC, Ex. 1 § 5(b); Ex. 2 §§ 3.2, 3.4), the Court may consider these documents in relation to this Motion. *See Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021) ("The court may consider the full text of documents that are cited in, incorporated by reference in, or 'integral' to the complaint." (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).)).

improperly monetize content that is ineligible for monetization on YouTube," with more severe consequences for each violation. (*See* Bruno Decl., Ex. B ("YouTube Circumvention Policy"); *see also* Ex. C ("YouTube Spam, Deceptive Practices, & Scams Policies").) In addition to official warnings, a user's repeated violations of YouTube's policies can result in removal of the user's ability to monetize content or termination of the user's contracts with YouTube entirely. (*Id*.)

### B.    Blast Off's Business Model and Widespread Violations of YouTube's Policies.

Blast Off provides music for influencers to attach to short-form YouTube videos. (FAC ¶ 25.) According to the FAC, Blast Off "owns approximately 800 music tracks and makes them freely available through YouTube's public sound library" and has "a network of over 20,000 active YouTube content creators using its catalog." (*Id.* ¶¶ 25, 29.) Blast Off receives revenue from advertisements and subscription fees posted on YouTube. (*Id*.) Specifically, through standard "Non-Exclusive Content Creator Revenue Share" Agreements, Blast Off partners with YouTube content creators to split a portion of the advertisement and subscription revenue generated from videos using Blast Off's tracks. (*Id.*; *see also* FAC, Ex. 2 (the "Revenue Share Agreement"), § 4.)

### C.    Blast Off's YouTube Distribution Agreement with Downtown.

According to the FAC, "[b]ecause it does not have the resources to manage the Content ID and YouTube monetization process by itself, Blast Off depends on relationships with larger companies to do so." (*Id.* ¶ 31.) To that end, Blast Off previously entered into a Program Agreement with AudioMicro, Inc. (Downtown's indirect subsidiary) in May 2024 to "to manage its content on YouTube." (*Id.* ¶ 32.) That agreement was assigned to Downtown, and the parties then renegotiated it, culminating in the execution of the Agreement at issue here. (*Id.* ¶ 35.)

Without providing specifics, Blast Off alleges that "discussions" occurred during which "Defendants" (unclear who) "made numerous material representations to induce Blast Off to agree to the transaction." (*Id.* ¶ 34.) Blast Off identifies just three generalized representations: (i)

"Superior YouTube Relationships"; (ii) "Expertise in Managing YouTube Compliance"; and (iii) "Commitment to the Relationship," without alleging who made such representations, what specifically was said, when and where, or how such representations were untrue. (*Id.*)

Under the Agreement, Downtown agreed to distribute and administer Blast Off's content on YouTube and, in return, would provide Blast Off a ████████████, broken down as follows: (i) a ████████████ on future earned royalties, the ████████████ and, later, (ii) two ████████████ (*Id.*, Ex. 1, § 3(a).)

In Section 5, Blast Off expressly represented and warranted to Downtown that its Content "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" and "████████████████████████████████████████████████████████████████." (*Id.* §§ 5(b)(iii)-(iv) (emphasis added).)

Other notable provisions include the following:

- **Section 6**: Downtown and Blast Off agreed to ████████████████████████████████████████████.]" In the event of a third-party claim—such as by YouTube—Section 6 expressly permits Downtown to ████████████████████████. (*Id.* § 6.)

- **Section 7**: contains a contractual ████████████, providing that ████████████████████████████████████████████████████.]" (*Id.* § 7 (capitalization removed).)

- **Section 15**: contains a ████████████████████████████████████████████████████████████████████" (*Id.* § 15.)

**D.** __YouTube Sends Downtown an Official Warning About Blast Off's Content.__

On September 25, 2025, YouTube sent Downtown an Official Warning that Blast Off's music was intentionally used to circumvent YouTube's monetization policy. (FAC ¶ 54; *see also* Bruno Decl., Ex. D.) In response, Blast Off admitted that it could not control who used Blast Off's content or whether such use violated YouTube's monetization policies. (FAC ¶¶ 59-61.) According to the FAC, because the use of "Blast Off's music [is] at [a] massive scale," ***managing [YouTube] compliance is an ongoing challenge***[.]" (*Id.* ¶ 49 (emphasis added).) To address these "***inherent [YouTube] compliance challenges***[,]" Blast Off began utilizing "AI-powered compliance tools to monitor the use of its music on YouTube." (*Id.* ¶ 50 (emphasis added); *see also id.* ¶ 59.)

In the days leading up to YouTube's Official Warning, Blast Off reported to Downtown that it was "on a banning spree" and had flagged over 100 YouTube channels, many of which were apparently associated with Korean companies. (*Id.*) On September 30, Blast Off advised Downtown that it had identified 660 YouTube channels that would require "white-listing," which (according to the FAC) "means releasing any existing revenue claims . . . and preventing future monetization of those channels." (*Id.* ¶¶ 62-63.) On October 1, 2025, Blast Off requested Downtown completely remove a music track from Blast Off's library due to its widespread use in videos that violated YouTube's policies. (*Id.* ¶ 64.) On October 2, 2025, and following YouTube's Official Warning, Downtown served Blast Off with an official notice of material breach and immediate termination of the Agreement. (Bruno Decl., Ex. E.)

To assess the full extent of Blast Off's non-compliance (and potential risk of future violations), Downtown further investigated Blast Off's assets and determined that (i) ██ of Blast Off's top assets were circumventing (or attempting to circumvent) YouTube's monetization policies; (ii) an estimated ██ of Blast Off's total revenue derived from policy-violating activities; and (iii) for September 2025, assets that accounted for at least ██ of Blast Off's reported revenue

derived a portion of that revenue from channels containing reused content, in violation of YouTube's policies. (*See* Bruno Decl., Ex. G.) Downtown shared these findings with Blast Off in a subsequent letter on October 22, 2025. (*Id.*) In it, Downtown advised Blast Off that because "Blast Off's entire business model relies on the improper circumvention of YouTube's policies, rules, terms, and content standards," "[i]t would be impossible for Blast Off to reinvent itself within ███ into an entirely different company that was not reliant on such an operational foundation." (*Id.*) Blast Off does not allege that it ever cured its breach, ever proposed any cure for its breach, or ever explained that it could effectuate any cure ███████.

## LEGAL STANDARD

"In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court 'accepts all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor.'" *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 405-06 (S.D.N.Y. 2020) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). "This requirement 'is inapplicable to legal conclusions.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint must offer more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement' in order to survive dismissal." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## ARGUMENT

## I.    BLAST OFF FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT

In a transparent attempt to avoid the Agreement's ███████████, Blast Off tries to dress up a standard contract claim as one of fraud. Courts in this Circuit routinely reject such efforts, and this Court should here, too. First, Blast Off fails to satisfy Rule 9(b)'s heightened pleading standard. Second, Blast Off does not plead the required elements of fraud, including that

Downtown *knowingly* made false statements or that Blast Off justifiably relied upon the same.[2] In fact, Section 15's ███████████ dooms Blast Off's hindsight effort to rely upon statements and representations that were not memorialized in the operative agreement. Finally, Blast Off's fraud claim is duplicative of its breach of contract claim because it does no more than allege Downtown was insincere about its promise to perform, which is insufficient as a matter of law. For each of these reasons, the fraud claim should be dismissed.

### A.    <u>Blast Off Fails to Satisfy Rule 9(b)'s Pleading Standard.</u>

Blast Off's fraud claim must meet Rule 9(b)'s heightened pleading requirements. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *17 (S.D.N.Y. Mar. 10, 2021) (citation omitted)).

Here, Blast Off's fraud claim rests on three broad categories of alleged representations: that "Defendants" (i) possessed a "superior" relationship with YouTube; (ii) held themselves out "as experts in navigating YouTube's policies" and ensuring compliance; and (iii) were "committed to a long-term partnership with Blast Off." (FAC ¶¶ 34, 112.) These supposed representations utterly fail to meet Rule 9(b)'s standards in every respect.

***The FAC fails to identify the <u>who</u>***. The FAC fails to identify the speaker of each purported statement or even which Defendant entity made the statement. Rather, Blast Off improperly

---

[2] "To state a claim for fraud under New York law, a plaintiff must prove [i] a representation of fact, [ii] which is untrue and either known by defendant to be untrue or recklessly made, [iii] which is offered to deceive and to induce the other party to act upon it, [iv] and which causes injury.'" *Trodale Holdings LLC v. Bristol Healthcare Invs. L.P.*, 2018 WL 2980325, at *4 (S.D.N.Y. June 14, 2018) (quoting *PetEdge v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017)).

attributes these broad representations to "Defendants" as a whole. This, alone, warrants dismissal. *HSM Holdings, LLC*, 2021 WL 918556, at *18 (dismissing fraud claim where complaint "generally group[ed] 'Defendants' . . . together, without identifying which of the Defendants made [the] statement"); *Druyan v. Jagger*, 508 F. Supp. 228, 242 (S.D.N.Y. 2007) (a general allegation that the statement was made by "defendants," without identifying the defendant individually, does not suffice for purposes of Federal Rule 9(b)); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (accord).

**Failure to identify the <u>what</u>**. The FAC does not identify the actual content of any purported misstatement, let alone identify *what* about the particular statement was false. Without these details, it is impossible for Defendants to know what they are charged with saying and "why [Blast Off] considers it to be untrue and fraudulent." *HSM Holdings, LLC*, 2021 WL 918556, at *18; *Coppelson v. Serhant*, 2021 WL 148088, at *7 (S.D.N.Y. Jan. 15, 2021) (Rule 9(b) not satisfied where plaintiff "fails to allege except in the most general terms where the statements were made or what about them was false"); *see also Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) ("where multiple Defendants are alleged to have committed fraud, the Complaint must 'allege specifically the fraud perpetrated by each defendant.'" (citation omitted)).

**Failure to identify the <u>when</u> or <u>where</u>**. Rather than provide the specific dates these purported statements were made, Blast Off only refers to a general timeframe ("[i]n or around August 2025") and makes no mention as to where these representations were made. (FAC ¶ 32, 34.) Such imprecision, again, falls short. *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 290-91 (S.D.N.Y. 2023) (Engelmayer, J.) (dismissing fraud in the inducement claim and collecting cases); *Eaves*, 785 F. Supp. 2d at 248-49 (same). Accordingly, because the fraud claim fails to plead the claim with particularity under Rule 9(b), it should be dismissed.

### B.    Blast Off Fails to Plead Contemporaneous Fraudulent Intent.

Blast Off's fraud claim also fails because the FAC does not assert any facts to "support[] that the alleged 'inducements' were false *at the time they were made*." *Coppelson*, 2021 WL 148088, at *8 (emphasis added); *see MMCT, LLC v. JTR College Point, LLC*, 122 A.D.3d 497, 499 (N.Y. App. Div. 1st Dep't 2014) (dismissing fraud claim where the plaintiff failed to "allege any facts that would support an inference that the statement was false at the time it was made"). Settled law requires Blast Off to "allege facts that give rise to a strong inference of fraudulent intent" that can be demonstrated by pleading facts that show (i) "that defendants had both motive and opportunity to commit fraud" or (ii) "conscious misbehavior or recklessness." *Trodale Holdings LLC*, 2018 WL 2980325, at *3, 5-6 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)) and dismissing fraud claim for failure to plead fraudulent intent); *Miller v. Holtzbrinck Publishers, LLC*, 2009 WL 528620, at *3 (S.D.N.Y. Mar. 3, 2009) (accord).

Here, again, Blast Off charges Downtown collectively as having engaged in fraud but fails to identify any specific Downtown representatives who were aware that specific representations were false when made. *See Eaves*, 785 F. Supp. 2d at 249 (dismissing fraud claim where complaint failed to identify "any particular communication from [the defendant] (as opposed to the many intermediaries between [the defendant] and Plaintiffs) that induced Plaintiffs"); *see also Duran v. Henkel of Am.*, 450 F. Supp. 3d 337, 353-56 (S.D.N.Y. 2020) (Engelmayer, J.) (no fraudulent intent where the complaint failed to "allege facts to support that any particular corporate officer—let alone a particular scientist—was aware" of false statements relating to product); *see also In re Welspun Litig.*, 2019 WL 2174089, at *16 (S.D.N.Y. May 20, 2019) (dismissing fraud claims against retailer defendants where allegations were "far too general to generate a strong inference of intent to defraud."). The fraud claim fails for this reason, too.

At best, the FAC rests on a theme of "buyer's remorse," positing that (i) the Agreement

was becoming "increasingly burdensome and decreasingly profitable" for Downtown; (ii) Blast Off's business model jeopardized Downtown's established relationship with YouTube; and (iii) unforeseen complications related to UMG's anticipated acquisition of Downtown developed due to (among other things) Blast Off's inability to comply with YouTube's policies. (FAC ¶¶ 10, 77-81.) But each of these muddled theories is retrospective and cannot support fraudulent inducement based on statements and intent that would need to have occurred beforehand.[3] Blast Off's claim, therefore, rests on classic "fraud by hindsight" allegations, which courts time and again have held are insufficient. *See Coppelson*, 2021 WL 148088, at *8 (collecting cases); *see also MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010) ("generalized motives" "do not constitute the type of 'concrete benefit' necessary to allege fraudulent intent"); *see also Trodale Holdings LLC*, 2018 WL 2980325, at *5 ("the Court cannot infer fraudulent intent" where actions were taken "for 'legitimate business reasons'" (citation omitted)).

At bottom, Blast Off's fraudulent inducement claim is nothing more than a grievance that Downtown (in the eyes of Blast Off) allegedly failed to perform as promised under the Agreement; but "a mere showing of nonperformance" cannot support a claim of fraud—cases are legion on this score. *Soper v. Simmons Intern., Ltd.*, 632 F. Supp. 244, 249 (S.D.N.Y. 1986) (collecting cases).

### C.  Blast Off Fails to Plead Reliance.

The fraud claim separately fails because Blast Off fails to plead reliance. *Premium Mortg.*, 583 F.3d at 108 (affirming dismissal of fraud claim for failure to plead justifiable reliance); *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 826 (N.Y. 2016) (elements of fraud claim include justifiable reliance). "New York courts are typically reluctant to consider a plaintiff's reliance upon oral communications reasonable," particularly where the agreement contains a

---

[3] Blast Off's suggestion there was "economic motivation" associated with Downtown's decision to terminate the Agreement (*see* FAC ¶¶ 79-80), is illogical and implausible—by virtue of the revenue-sharing provision of the Agreement, Downtown stood to earn more as Blast Off's revenue continued to grow.

merger clause disclaiming prior oral agreements. *Junk v. Aon Corp.*, 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007) (dismissing fraudulent inducement claim based on oral representations). That holds true here, where the Agreement's ▆▆▆▆▆▆ in Section 15 states:



(FAC, Ex. 1, § 15 (emphasis added).) It cannot be disputed that none of the representations cited by Blast Off for its fraud claim are found in the Agreement. (*See id.*, § 5.) And Blast Off is a sophisticated party that was represented by counsel in negotiating and executing the Agreement, which Blast Off claims to be worth tens of millions of dollars. (FAC ¶ 98.)

Thus, Blast Off's alleged reliance upon general representations is, as a matter of law, unreasonable and incapable of supporting its fraud claim. *See Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (sophisticated investor could not assert reliance on an oral representation when agreement lacked mention of the oral representation and included a standard merger clause); *see also Primedia Enthusiast Pub. Inc. v. Ashton Int'l Media, Inc.*, 2003 WL 22220375, at *6 (S.D.N.Y. Sept. 25, 2003) ("Notwithstanding the lack of an explicit disclaimer of representations . . . courts may disregard a fraudulent inducement claim . . . when the parties have negotiated at arms lengths and they are sufficiently sophisticated that they could have easily protected themselves[.]" (collecting cases)).

### D.    <u>Blast Off's Fraud Claim is Duplicative of Its Breach of Contract Claim.</u>

Finally, Blast Off's fraudulent inducement cause of action must be dismissed as duplicative of its contract claim. "A fraud-based cause of action is duplicative of a breach of contract claim 'when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.'" *Mañas v. VMS Assocs., LLC*, 53 A.D.3d 451, 453 (N.Y. App. Div. 1st Dep't 2008) (dismissing fraud claims as duplicative of a breach of contract claim); *MMCT LLC*, 122

A.D.3d at 499 ("fraudulent inducement claim duplicates the breach of contract claim because plaintiff has not alleged any representation that is collateral to the contract"); *see also Kitchen Winners*, 668 F. Supp. at 293-94. Here, Blast Off does not (and cannot) identify a representation collateral to the contract; instead, it simply relabels its contract claim as one of fraud based solely on the fact that Downtown allegedly did not perform as promised—precisely what courts routinely dismiss as duplicative. *See id.*

Indeed, each of the supposed representations on which Blast Off allegedly relied (FAC ¶ 34) was specifically accounted for and overridden by the express terms of the Agreement itself because Blast Off granted Downtown the contractual right to terminate the Agreement if Blast Off failed to comply with YouTube's policies. This is precisely why the ███████ dooms Blast Off's claim—the contract itself reflects the only representations and warranties at issue.

## II.    BLAST OFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Blast Off's breach claim also fails because it cannot plausibly plead a breach of the Agreement. To state a claim for breach, Blast Off must plead facts demonstrating that it performed under the contract while Downtown breached the same. *See Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658, at *3-4 (E.D.N.Y. Nov. 1, 2011) (dismissing complaint that did not allege plaintiff's performance of its contractual obligations); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). A breach is considered "material" where the breach "'go[es] to the root of the agreement between the parties' . . . and 'defeats the object of the parties in making the contract[.]'" *Belsito Commc'ns, Inc. v. Dell, Inc.*, 2013 WL 4860585, at *7 (S.D.N.Y. Sept. 12, 2013) (defendant's material breach excused plaintiff's non-performance). A defendant's performance is excused where the plaintiff does not perform under the contract. *Udell v. Berkshire Life Ins. Co. of Am.*, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (dismissing breach of contract claim where plaintiff did not "even generally allege" performance of his remaining

obligations under the contract); *Glob. Intellicom, Inc. v. Thomson Kernaghan & Co.*, 1999 WL 544708, at *18 (S.D.N.Y. July 27, 1999) (dismissing breach of contract claim where plaintiff failed to allege its own performance). Here, Blast Off identifies purported breaches of five separate sections the Agreement, none of which can sustain its claim. (FAC ¶¶ 122-28.)

*First*, Blast Off alleges that Downtown breached the Agreement by "fail[ing] to maintain Content ID claims on Blast Off's content properly." (FAC ¶ 122.) This theory, however, rests on the mistaken (and ridiculous) argument that Downtown was required to blindly submit and maintain Content ID claims on Blast Off's behalf, even where such claims aided violations of YouTube's terms. On the contrary, Section 2(a) instead confirms the rights that Blast Off conferred to Downtown to ████████████ including:



(FAC, Ex. 1, § 2(a).) Here, Blast Off does not claim that Downtown failed to fulfill its duties before receiving the Official Warning. Instead, it argues that Downtown should have continued to maintain Content ID claims, even if that meant aiding and abetting the circumvention of YouTube policies. This theory finds no support in the plain language of Section 2 (or anywhere else in the Agreement)—indeed, it runs counter to the express representations that Blast Off's content ████ ███████████████—and, therefore, cannot support a claim of breach.

**Second**, Blast Off's assertion that Downtown has wrongfully withheld revenue, in breach of Sections 3 and 6, directly conflicts with parties' express ████████████████ under the Agreement. Specifically, Section 6 (on which Blast Off relies) ████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████ [.]" (FAC, Ex. 1, § 6.) Critically, Section 6 further provides Downtown with the right ████████████████████████████████████████ ████████████████████████████████████████. (*Id.*) As it must, Blast Off admits that its music violated YouTube's policies and that YouTube issued an Official Warning to Downtown, in which it cited Blast Off's intentional circumvention and violation of YouTube's monetization policies and terms. (FAC ¶¶ 5, 54, 64; *see also* Bruno Decl., Ex. D.). This Official Warning, in turn, triggered Downtown's ██████████████████████████████████ ████████████████████████████████████. (FAC, Ex. 1, § 6.) Put simply, Blast Off takes issue with Downtown adhering to its contractual obligations, which cannot support a claim for breach. *Edart Leasing Co., LLC v. Ryder Truck Rental, Inc.*, 2015 WL 4524313, at *4 (S.D.N.Y. July 6, 2015) (good faith withholding of funds under an indemnification provision did not breach contract); *see also IDT Corp. v. Tyco Grp., S.A.R.L.*, 23 N.Y.3d 497, 503-04 (N.Y. 2014) (no breach where party acted consistent with contractual obligations).

**Third**, while Blast Off concedes facts establishing its breach (*see* FAC ¶¶ 5, 9, 54-55, 59-64), it nevertheless tries to pass blame to Downtown for failing to honor Section 8's ████████ ██ provision. (*Id.*, Ex. 1, § 8.) However, it is settled New York law that "strict compliance with a contractual notice-and-cure provision" is not required "if providing an opportunity to cure would be useless, or if the breach undermines the entire contractual relationship such that it cannot be cured." *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209-10 (2d Cir. 2014) (collecting cases); *see also Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482

(E.D.N.Y. 2020) (refusing to enforce strict compliance with notice-and-cure provision). As such, a non-breaching party is not required to provide the breaching party with an opportunity to cure when doing so would be futile. *Id.*

Blast Off's own complaint betrays itself on this score. Among other things, Blast Off admits that (i) anyone can use Blast Off's music; (ii) "managing [YouTube] compliance is an ongoing challenge"; (iii) it is playing whack-a-mole by trying to ban infringing channels on a daily basis (more than 100 in just a "few days"); and (iv) it recently began relying upon an untested AI tool "to catch any channels using our music that shouldn't be monetized." (FAC ¶¶ 49-50, 59, 62-63.[4]) These admissions and scattershot corrective efforts underscore that violations of YouTube's policies were endemic to Blast Off's catalog and could not be cured by a single act, and certainly not within ███████ Indeed, Blast Off never represented in its pre-suit correspondence that it could or would cure the breach noticed by Downtown (*see* Bruno Decl., Ex. F) nor ever alleges in the FAC that it could do so, either—undoing this argument entirely.

**_Finally_**, Blast Off cannot plausibly allege that its noncompliance with YouTube's policies was immaterial—especially when Blast Off expressly represented and warranted to Downtown that its "████████████████████████████████████████████████ ███████████████████████████████████████████████." (FAC, Ex. 1, § 5(b).) Indeed, the very purpose of the Agreement depends on the parties' ability to "███████████████████ ███████████████" to monetize Blast Off's content. (FAC, Ex. 1, § 1(e).) However, by Blast Off's own admission, its entire business model violates YouTube's policies and defeats the purpose of the Agreement altogether. *See EXRP 14 Holdings LLC v. LS–14 Ave LLC*, 228 A.D.3d 498, 498-99 (N.Y. App. Div. 1st Dep't 2024) (affirming dismissal of contract claim where material breach

---

[4] Elsewhere in the FAC, Blast Off concedes that there have been more than "**_660 problematic channels_**" identified. (FAC, ¶ 133 (emphasis added).)

excused performance); *see also Glob. Intellicom, Inc.*, 1999 WL 544708, at *18. For each of these reasons, Blast Off's contract claim fails.

### III.    BLAST OFF FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT

Blast Off's implied covenant claim is nothing more than an improper attempt to rewrite or contradict the express terms of the contract, each of which is impermissible. "The covenant of good faith and fair dealing 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 220 A.D.3d 435, 435-36 (N.Y. App. Div. 1st Dep't 2023) (citation omitted). The covenant "is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) (citation omitted). Nor can the covenant be used "to impose obligations . . . beyond the express terms of the parties' agreement." *Darabont v. AMC Network Ent., LLC*, 193 A.D.3d 500, 500 (N.Y. App. Div. 1st Dep't 2021). Put differently, an implied covenant claim "may not be used as a substitute for a nonviable claim of breach of contract." *StarVest Partners II, L.P. v. Emportal, Inc.*, 101 A.D.3d 610, 613 (N.Y. App. Div. 1st Dep't 2012) (collecting cases). Blast Off runs afoul of these well-settled principles.

Here, Blast Off contends that Downtown has violated the implied covenant by manufacturing pretextual grounds for termination and prioritizing its relationship with YouTube and its impending acquisition. (FAC ¶ 132.) This theory, however, simply repackages Blast Off's faulty fraud claim, discussed above. Blast Off also complains that Downtown delisted and allowed competing claims on Blast Off's content. (*Id.*) But this ignores the fact that these purported acts occurred **after** Downtown properly exercised its right to terminate the Agreement. *See, e.g.*, *Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 904 (N.Y. App. Div. 4th Dep't 1984) ("When a contract is terminated . . . the rights and obligations thereunder cease."); *Symquest Grp., Inc. v.*

*Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016) (dismissing implied covenant claim based on nonperformance where a party was within its contractual rights to not perform post-termination).

Repeating its contract claim, Blast Off accuses Downtown of breaching the implied covenant by withholding revenue and demanding repayment of the ███████. (FAC ¶ 133.) However, Sections 6 and 9(e) of the Agreement expressly permit Downtown to █████████ ████████████████████████████████████████████████████ ███████  ██████  ████████████. *See Gottwald v. Sebert*, 148 N.Y.S.3d 37, 47 (N.Y. App. Div. 1st Dep't 2021) ("implied covenant of good faith and fair dealing 'cannot be construed so broadly as effectively to nullify other express terms of a contract'" (citation omitted)). Blast Off also points to Downtown's alleged "[i]gnoring [of] Blast Off's extensive, proactive compliance efforts" as support for its implied covenant claim. (FAC ¶ 133.) In doing so, Blast Off seeks to rewrite the Agreement to add a "good-faith effort" exception to Section 5(b) to excuse itself of its material breach—a tactic that New York law does not tolerate. *See Darabont*, 193 A.D.3d at 500; *Gottwald*, 148 N.Y.S.3d at 47. Again, if Blast Off wanted such terms, it could have insisted upon them in negotiations with Downtown while represented by sophisticated counsel.

Finally, dismissal of the implied covenant claim is warranted because it is duplicative of the breach claim. *Logan Advisors, LLC v. Patriarch Partners, LLC*, 63 A.D.3d 440, 466-67 (N.Y. App. Div. 1st Dep't 2009) (dismissing implied covenant claim "as duplicative of the breach of contract claim because both claims arise from the same facts"); *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017) (Engelmayer, J.) (dismissing implied covenant claim because it "impermissibly duplicates its breach of contract claim"). For each of these reasons, the implied covenant claim should be dismissed with prejudice.

**IV.    BLAST OFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT**

The unjust enrichment claim fails because Blast Off fails to allege any benefit conferred on Downtown or damages independent of the contract claim. To prevail on an unjust enrichment claim, "a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). Under New York law, "[a] claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter." *Goldstein v. CIBC World Mkts. Corp.*, 776 N.Y.S.2d 12, 14 (N.Y. App. Div. 1st Dep't 2004) (holding that complaint failed to state a claim for unjust enrichment where the unjust enrichment claim was "indistinguishable from the breach of contract claim" (internal quotation marks and citation omitted)). Courts must dismiss a claim of unjust enrichment where it arises from the same facts as plaintiff's other claims and does not allege distinct damages. *Andrews v. Cerberus Partners*, 271 A.D.2d 348, 348 (N.Y. App. Div. 1st Dep't 2000) (affirming dismissal of unjust enrichment claim since it was "indistinguishable from the breach of contract claim").

Blast Off pleads none of the essential elements for unjust enrichment. At bottom, Blast Off does not (and cannot) plead facts demonstrating how Downtown benefitted to Blast Off's detriment. The opposite is self-evidently true based on the FAC's own allegations: due to Blast Off's material breaches and refusal to return Downtown's ████████████ it is Blast Off (not Downtown) that has been unjustly enriched. That aside, because the Agreement squarely addresses the subject matter of Blast Off's unjust enrichment claim, it cannot stand. *Diesel Props S.r.l.*, 631 F.3d at 54 (affirming district court's dismissal of unjust enrichment claim where enforceable agreements existed between the parties); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987) (affirming dismissal of unjust enrichment claim where "it is undisputed that the relationship between the parties was defined by a written contract"). The recoupment of the

███████ upon termination, the withholding revenue, and the termination are all subjects contemplated by and provided for within the Agreement. (FAC, Ex. 1, §§ 6, 9(e).) And, because the very same factual allegations supporting the unjust enrichment claim are all included in Blast Off's breach of contract claim—*compare* FAC, ¶¶ 136-42, *with id.* ¶¶ 118-29—Count III must be dismissed as duplicative.

## V.    BLAST OFF FAILS TO STATE A CLAIM FOR CONVERSION

"To withstand a motion to dismiss in a conversion claim, a plaintiff must allege: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (citation omitted); *see also Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44-45 (N.Y. 1995).

Blast Off pleads none of these elements. *First*, Blast Off ignores the fact that, under the Sections 6 and 9(e) of the Agreement, Downtown is authorized and permitted to ███████ ████████████████████████████████████████████. *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 681 (S.D.N.Y. 2023) ("Where the defendant's exercise of dominion is authorized, when it follows the plaintiff's instructions, no claim of conversion can lie."). *Second*, the Amended Complaint fails to identify any specific assets or "thing[s]" over which Defendants purportedly exercised dominion and control. *See Kirschner*, 648 F. Supp. 2d at 540 (granting motion to dismiss where the plaintiff failed to plead "specifically identifiable assets"); *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 151 (S.D.N.Y. 2000) (dismissing conversion claims because, among other things, "the funds in question are not 'specifically identifiable'" (internal citation omitted)). *Third*, Downtown has not

(and cannot) exercise control over Blast Off's music library by "de-listing" the content (FAC ¶ 145) because, upon termination of the Agreement, all rights conferred by Blast Off terminate and automatically return to Blast Off (*id.*, Ex. 1, § 9(f).) In other words, Downtown does not control Blast Off's catalog following termination as a contractual matter and therefore cannot have converted it. Blast Off concedes as much, alleging that it has tried to find new partners to distribute Blast Off's catalog (*id.* ¶ 102), which it could not do if it lacked possession of its catalog. *Finally*, Plaintiff's conversion claim fails because it, again, relies upon the same facts and circumstances giving rise to its breach of contract claim. *See Johnson v. Cestone*, 162 A.D.3d 526, 527 (N.Y. App. Div. 1st Dep't 2018) ("The conversion . . . claims are duplicative of the breach of contract claims, i.e., they are predicated on breaches of contract and allege no facts that would give rise to tort liability."). For all of these reasons, the conversion claim fails.

## VI.    BLAST OFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Blast Off's tortious interference claim also fails because Blast Off fails to plead the necessary elements. To state such a claim, a plaintiff must allege that: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Kitchen Winners*, 668 F. Supp. 3d at 298 (internal citation omitted) (dismissing tortious interference claim); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 535-36 (S.D.N.Y. 2013) (Engelmayer, J.) (same). Satisfaction of the third prong—improper means—is a high bar that requires conduct "that amount[s] to a crime or an independent tort." *Id.* (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004)). Here, the FAC does not come close to satisfying the necessary requirements.

To begin, while Blast Off identifies five purported business relationships with influencers, nowhere does the FAC plead any plausible facts establishing Downtown's *knowledge* of these specific relationships, let alone interference with same. (*See* FAC ¶¶ 148-50.) Instead, Blast Off attempts to establish Downtown's knowledge based on the "purpose of the Agreement" itself (*id.* ¶ 150), but nowhere in the Agreement is there any reference to these content creators or any other business relations between Blast Off any other third parties. Moreover, the Agreement's ███████ ███████████████ in Section 7 confirms the parties ██████████████████████ ██████████████. (*Id.*, Ex. 1, § 7.) Even still, the FAC does not (and cannot) plead facts that satisfy the requirement that Downtown directed its conduct at content creators "so as to 'convince [them] not to enter a business relationship with [Blast Off]." *Kitchen Winners*, 668 F. Supp. 3d at 298-99 (quoting *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010)).

That aside, the FAC fails to plausibly allege facts demonstrating that Downtown acted "solely with malice," as is required to survive a motion to dismiss. Instead, Blast Off alleges that Downtown "acted with the improper purpose of destroying Blast Off's business to prevent Blast Off from working with competing monetization services and to eliminate any potential business threat from Blast Off." (FAC ¶ 152.) Putting aside that this allegation is wholly conclusory, it is nonsensical and entirely inconsistent with Blast Off's other allegations regarding Downtown's own economic motives. (*See id.* ¶¶ 79-83.) Taking these allegations as true (as the Court must at this stage), such motives are akin to "normal economic self-interest" and "[are] not actionable under New York law." *JCBHoldings NY, LLC*, 931 F. Supp. 2d at 536 (quoting *Carvel*, 3 N.Y.3d at 190); *Kitchen Winners*, 668 F. Supp. 3d 298 (accord); *see also Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 389 (S.D.N.Y. 2022) ("A motive of 'normal economic self-interest' is inconsistent with the sole purpose of inflicting intentional harm." (citation omitted)).

Nor does the FAC otherwise allege that Downtown utilized any "wrongful means." To satisfy that element, "as a general rule, the defendant's conduct must amount to a crime or an independent tort." *Carvel*, 3 N.Y.3d at 190. Nothing in the FAC satisfies such a high standard. At most, Blast Off complains that Downtown did not perform as promised under the Agreement—but that falls woefully short of demonstrating "wrongful means." *See Kitchen Winners*, 668 F. Supp. 3d at 299 (collecting cases); *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 435 (S.D.N.Y. 2003) ("While the Complaint may be read to plead an interference with prospective business relations *resulting* from a breach of contract, such a claim does not amount to tortious behavior. What makes interference *tortious* is that the defendant acted with the intent to interfere." (emphasis within)). Again, the relationship between Downtown and Blast Off is set forth in the Agreement—there is no room for extraneous tort claims like this one.

## VII.   BLAST OFF'S SEVENTH AND EIGHTH CLAIMS ARE SOLELY REMEDIES AND DUPLICATIVE OF THEIR OTHER CLAIMS, AND MUST BE DISMISSED

The FAC's final two claims—injunctive relief (Count VII) and declaratory judgment (Count VIII)—also fail. First, they are not independent causes of action that can form the basis for a claim. *See TufAmerica, Inc. v. Universal Music Pub., Inc.*, 2025 WL 2700249, at *2 (S.D.N.Y. Sept. 23, 2025) ("At the outset, the Court notes that neither a declaratory judgment nor injunctive relief are independent causes of action.") (collecting cases); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgment and injunctions are remedies, not causes of action.") (collecting cases).

Moreover, they seek remedies that are duplicative of Blast Off's other failed claims, and therefore must fall, too. *See Hauptman v. Interactive Brokers, LLC*, 2018 WL 4278345, at *7 (S.D.N.Y. June 12, 2018) ("absent any viable underlying claims, Plaintiffs are not entitled to declaratory or injunctive relief").

## VIII.    BLAST OFF'S REQUEST FOR CONSEQUENTIAL AND PUNITIVE DAMAGES SHOULD BE STRICKEN

Blast Off seeks damages foreclosed by the Agreement's ███████████████████████, which should be dismissed or stricken under Rules 12(b)(6) or 12(f). This ████████ provision— the result of negotiations between sophisticated parties represented by counsel—is enforceable under New York law and bars Blast Off's efforts to seek such remedies, particularly where Blast Off's tort claims fail, as explained herein. *See Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 480 (N.Y. App. Div. 1st Dep't 2010) (after affirming dismissal of tort claims, holding that consequential damages were "expressly precluded by the contractual provision limiting the parties' liability for consequential damages"); *Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley*, LLC, 2012 WL 4119561, at *3-*6 (S.D.N.Y. Sept. 18, 2012) (limitation of liability provision precluded plaintiff's claims for "consequential, special, punitive or indirect damages"). To the extent any claims in the FAC survive (though none should for the reasons above), the paragraphs in the FAC seeking consequential and punitive damages in violation of the contractual ██████████████, including Paragraph 6 of the Prayer, should be struck.

### CONCLUSION

For the reasons stated above, Downtown respectfully requests the Court to (i) grant Downtown's motion to dismiss the First Amended Complaint with prejudice in its entirety; (ii) strike Blast Off's requests for non-contractual remedies, including punitive and consequential damages; and (iii) award such further relief as the Court deems proper.

Dated:   New York, New York
         January 16, 2026

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By:  /s/ Matthew F. Bruno
     Matthew F. Bruno
     Annie Nguyen
     7 Times Square
     New York, NY 10036
     Tel.:  (212) 790-4500
     E-Mail:  MBruno@manatt.com
              ANguyen@manatt.com

     Nathaniel L. Bach (*pro hac vice* forthcoming)
     Connor Farley
     2049 Century Park East, Suite 1700
     Los Angeles, CA 90067
     Tel.: (310) 312-4000
     Email: NBach@manatt.com
            CFarley@manatt.com

     *Attorneys for Defendants Downtown Music Capital, LLC, Downtown Music LLC, and Downtown Music Holdings LLC*

## **<u>CERTIFICATION</u>**

I hereby certify that Defendants' Memorandum of Law in Support of Motion to Dismiss the First Amended Complaint complies with the word limits in accordance with Local Rule 7.1 of the United States District Courts for the Southern and Eastern Districts of New York and with the page and type size limit of the Section 3.C of the Individual Rules and Practices in Civil Cases for the Honorable Paul A. Engelmayer, United States District Judge. I hereby further certify that, in preparation of this Memorandum of Law, I used Microsoft Word 365, and that the word count function was applied specifically to include all text, including headings, footnotes, and quotations. The word count for the Memorandum of Law is 8,475 words in length.

Dated: New York, New York.                By:   /s/ Matthew F. Bruno
      January 16, 2026                                  Matthew F. Bruno